**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER ELLIOTT,<br>Plaintiff,<br>v.<br>JASON SCHULTZ, et al.,<br>Defendants. | No. 2:26-cv-0132-DMC-P<br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

/ / /

/ / /

Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) Jason Zchultz, the warden of the California State Prison – Sacramento (CSP-Sac); and (2) A. Camron, a correctional officer at CSP-Sac. See ECF No. 1, pg. 2. Plaintiff raises three claims for relief.

In his first claim, Plaintiff alleged that Defendant Schultz oversees the prison and, as warden, knew that his access to "legal court hearings" was being used as a form of retaliation for having filed inmate grievances in the past. See id. at 3. According to Plaintiff, every time he was scheduled to go out to court, correctional officers would lie and inform the court that Plaintiff refused to go. See id.

In his second claim, Plaintiff alleges that, on October 24, 2025, Defendant Schultz came to Plaintiff's cell at which time the two exchanged what Plaintiff characterizes as "fighting words." Id. at 4. Plaintiff contends that Defendant Schultz threatened his life by saying "watch 'n see." Id. Plaintiff claims that, the next day, a "fake" case was filed against Plaintiff in state court. Id. Plaintiff states that, after that, other inmates would threaten to kill him. See id.

/ / /

/ / /

/ / /

In his third claim, Plaintiff asserts that Defendant Camron came to his cell on January 4, 2026, after Plaintiff submitted a grievance against him for sexual harassment. See id. Plaintiff states that Defendant Camron took his food and refused to give Plaintiff back his tray. See id. Plaintiff adds that Defendant Camron then "put a lock box on my door" as he called Plaintiff "a nigger." Id. Plaintiff states that Defendant Camron then put his hand on his penis. See id.

## II. DISCUSSION

The Court finds that Plaintiff has plausibly stated a cognizable claim against Defendant Camron in his third claim based on retaliation. Plaintiff's claims against Defendant Schultz, as asserted in his first and second claims, however, are not sufficient to proceed. First, Defendant Schultz cannot be held liable simply because he supervises prison staff. Second, to the extent Plaintiff alleges retaliation, Plaintiff has not alleged that Defendant Schlutz had any prior knowledge of a protected activity engaged in by Plaintiff. Third, to the extent Plaintiff alleges that Defendant Schlutz was deliberately indifferent to a known safety risk, Plaintiff has not alleged facts to show that Defendant Schultz's conduct would have reasonably created such a risk. Plaintiff will be provided an opportunity to amend consistent with the legal principles outlined below.

### A. Supervisor Liability

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisory defendant may also be liable where he or she knew of constitutional violations but failed to act to prevent them. See

Taylor, 880 F.2d at 1045; see also Starr v. Baca, 633 F.3d 1191, 1209 (9th Cir. 2011).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Plaintiff appears to allege in his first claim that Defendant Schultz is liable by virtue of being the prison warden. As explained above, however, there is no respondeat superior liability under § 1983 and Defendant Schultz can only be liable for his own actions, not the actions of others under his supervision. Plaintiff will be granted leave to amend this claim in order to allege additional facts to show Defendant Schultz's personal involvement with respect to Plaintiff's claim that his access to the courts has been improperly impeded as a form of retaliation.

**B. Retaliation**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse

action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

In his first claim, Plaintiff appears to assert that Defendant Schultz retaliated against him by impeding his access to the courts. Plaintiff has not, however, alleged any facts to show that Defendant Schultz had any prior knowledge that Plaintiff engaged in protected activity and that such protected activity was the reason Plaintiff's access to the courts was impeded. Plaintiff will be granted leave to amend this claim to assert additional facts.

**C. Safety**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from safety risks. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837.

The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Plaintiff alleges in his second claim that he and Defendant Schlutz exchanged "fighting words" and that Defendant Schlutz said "watch 'n see." Plaintiff adds that, after that encounter, a "fake" case was filed against him in state court and that, following this filing, other inmates would threaten to kill him. Thus, the gravamen of this claim appears to be Plaintiff's belief that, due to the filing of the "fake" case, his life was put in danger. Plaintiff has not, however, alleged if or how other inmates would have known about this "fake" case against him, or how knowledge of the "fake" case by other inmates would result in a risk to his safety. Nor has Plaintiff alleged that Defendant Schlutz was somehow responsible for the filing of the "fake" case such that he could be liable for a known safety risk. Plaintiff will be provided an opportunity to amend.

## III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated: July 29, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE